UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10867-RWZ

ZACHARY DEESE-LAURENT

v.

REAL LIQUIDITY, INC., KEVIN GUY, and STANLEY SPRENGER

MEMORANDUM OF DECISION

March 30, 2018

ZOBEL, S.D.J.

This case arises out of a dispute over payment and benefits allegedly owed pursuant to several agreements contemporaneously entered into by the parties. Plaintiff Zachary Deese-Laurent entered an Employment Agreement with defendant Real Liquidity, Inc. ("RLI"), a corporation offering a secondary market for the trading of real estate shares. The parties concurrently executed a Stock Restriction Agreement, a confidentiality agreement, a Note Purchase Agreement, and a Convertible Promissory Note.  Together, these agreements not only created an employment relationship, but also established plaintiff as defendants' creditor; without the $100,000 equity investment in stock benefits memorialized across all agreements, plaintiff alleges he would not have accepted employment with defendant.

Essentially arguing that defendant terminated him so as to prevent his stock from vesting, plaintiff brings this action against RLI and its principals, Kevin Guy and Stanley

1

Sprenger, for payment of wages, commissions, and common stock benefits. Defendants move to dismiss for lack of personal jurisdiction, or alternatively for failure to state a claim (Docket # 7), and, relying on a forum selection clause located only in the Note Purchase Agreement, move to transfer venue to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Docket # 19.

### I. Background

#### A. The Parties

Plaintiff Zachary Deese-Laurent is a Massachusetts resident with a home office in the town of Newton Center. He is by profession an entrepreneur and investor who focuses on real estate, private equity, credit and venture capital. Defendant RLI, a Delaware corporation with a principal place of business in Florida, provides technology for the marketing and trading of private securities of syndicated real estate assets. Defendant Kevin Guy is a Florida citizen and RLI's Chief Executive Officer. Defendant Stanley Sprenger is a citizen of British Columbia, Canada, and RLI's Chief Operating Officer.

#### B. The Agreements

Deese-Laurent learned of RLI's business in the fall of 2015, and met soon thereafter with Guy to discuss possible collaboration. After many months of negotiations, plaintiff entered employment and confidentiality agreements with RLI on or about August 15, 2016. Although he normally required a monthly salary in the $20,000 range, plaintiff accepted a $4,000 monthly wage based on the understanding that RLI would provide him with a significant equity interest in the company in the form of common stock. Contemporaneously with the Employment Agreement, plaintiff also

signed a stock restriction agreement ("SRA"), convertible promissory note ("Note"), and note purchase agreement ("NPA").  Pursuant to the Note, NPA, and SRA, Deese-Laurent as manager of Vineyard Group Holdings, LLC[1], invested $100,000 in RLI and subscribed to 1.1 million shares of RLI common stock.

The SRA explicitly disclaims any obligation to continue plaintiff's employment, providing that RLI "may terminate such Business Relationship[2] and vesting at any time, for any reason or no reason, with or without prior notice."  Docket # 20-6, at 9.  Plaintiff's complaint nonetheless characterizes the interrelationship between these agreements as follows:

> At the time Deese-Laurent became RLI's Director of Listing Services, he also became, through Vineyard, a creditor of RLI.  In exchange for Deese-Laurent's $100,000 loan and the NPA and SRA, the Defendants agreed to an RLI stock acquisition and vesting scheme for Deese-Laurent.  Through these instruments, Deese-Laurent would obtain RLI common stock and a significant ownership stake in RLI.  But for this stock grant under the SRA, Deese-Laurent would not have lent the $100,000 to RLI or become an employee of RLI.

First Amended Complaint ("FAC") (Docket # 5), ¶ 25.

All agreements include a Florida choice-of-law provision, but only the NPA also contains a forum selection clause, identifying the federal court in the Middle District of Florida as the location for the filing of any action "arising out of or based upon this Agreement."  Docket # 20-3; Guy Aff., ¶¶ 17, 20.

---

[1] The Note Purchase Agreement was signed by the plaintiff as the manager of Vineyard Group Holdings, LLC, a Delaware limited liability company, which in turn is the manager of RL Vineyard Investors, LLC, also a Delaware limited liability company.  In conjunction with the Note Purchase Agreement, a Convertible Promissory Note was issued by Real Liquidity, Inc. to RL Vineyard Investors, LLC.  Plaintiff entered the Employment Agreement, confidentiality agreement, and SRA solely in his individual capacity.

[2] Defined as "service to the Company or its successor in the capacity of an employee, officer, or if so determined by the Board of Directors, as a consultant or director."  Docket # 20-6, at 3.

On January 30, 2017, Guy notified Deese-Laurent by email that 229,165 of his allotted shares of RLI stock had vested. The next day, Sprenger notified Deese-Laurent by email that RLI was changing his status from employee to independent contractor, retroactively effective to January 1, 2017. On February 21, 2017, Guy notified Deese-Laurent by email that RLI was terminating his employment and buying back his unvested shares. In April 2017, Plaintiff brought this action, which defendants then removed to federal court.

## II. Legal Standard

A motion to transfer under 28 U.S.C. § 1404(a) is the appropriate mechanism by which to enforce a forum-selection clause. Atl. Marine Const. Co. v. United States Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 579 (2013). Under § 1404(a), a district court may transfer a civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." Although a plaintiff's choice of forum is ordinarily entitled to some deference, a valid forum-selection clause alters that calculus. Atl. Marine, 134 S. Ct. at 581-82 ("when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises"). Accordingly, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" Id. at 579 (quoting Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). The burden of proof, moreover, rests with the party opposing enforcement of the forum-selection clause. Id. at 581; Get In Shape Franchise, Inc. v. TFL Fishers, LLC, 167 F. Supp. 3d 173, 205 (D. Mass. 2016).

4

After Atlantic Marine, it is thus true that "in the vast majority of cases when a forum-selection clause is included, a § 1404(a) motion to transfer will be allowed." Kebb Mgmt. v. Home Depot U.S.A., Inc., 59 F. Supp. 3d 283, 287 (D. Mass. 2014).  The Atlantic Marine standard is irrelevant, however, if the clause does not govern the claims set forth in the complaint.  See Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 47 (1st Cir. 2014) (after determining forum-selection clause is mandatory, "[t]he next step in evaluating the applicability of a forum selection clause is ascertaining its scope." (quoting Rafael Rodríguez Barril, Inc. v. Conbraco Indus., Inc., 619 F.3d 90, 92–93 (1st Cir. 2010))); see also Huffington v. T.C. Grp., LLC, 637 F.3d 18, 21 (1st Cir. 2011) ("[B]oth sides agree that the clause is exclusive; the issues primarily in dispute are whether the clause covers the claims set forth in [plaintiff's] complaint and, if so, whether the clause is enforceable.").  "[I]t is the language of the forum selection clause itself that determines which claims fall within its scope." Carter's of New Bedford, Inc. v. Nike, Inc., 790 F.3d 289, 293 (1st Cir. 2015) (quoting Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 19 (1st Cir. 2009)).

### III.   Analysis

Defendants contend that the forum-selection clause in the NPA establishes the State of Florida as the appropriate, exclusive forum and identifies two possible venues therein, and that transfer under 28 U.S.C. § 1404(a) is thus warranted.  In opposition, plaintiff argues that the forum-selection clause does not govern its claims for two principal reasons.  First, he emphasizes that his claims arise not out of the NPA but out of the Employment Agreement and SRA.  Second, he argues that his individual interests are distinguishable from those of the entity for which he signed the NPA, and

thus the NPA's forum-selection clause may not be enforced against a non-contracting party. I address each argument in turn.

### A. Application of Forum-Selection Clause

The forum-selection clause in the NPA provides as follows:

> **The parties** (a) hereby irrevocably and unconditionally submit to the jurisdiction of the state courts of Florida and to the jurisdiction of the United States District Court for the Middle District of Florida for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement, **(b) agree not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the state courts of Florida or the United States District Court for the Middle District of Florida,** and (c) hereby waive, and agree not to assert, by way of a motion, as a defense, or otherwise in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Note or the subject matter hereof may not be enforced in or by such court.

Docket # 20-3, at 11 (emphasis added). The First Circuit has construed the "any action" language of the instant clause to be "unambiguously broad." Carter's, 790 F.3d at 293. Moreover, the record indicates that plaintiff was on notice of, and bargained for, the above language. During negotiations, plaintiff – represented by counsel – proposed edits eliminating the forum-selection clause from the SRA. Defendants rejected the proposed changes and the final executed NPA included the language above. Such pre-contract negotiations "illuminate" the inquiry into the scope of the forum-selection clause, which otherwise turns, "as often is so with contracts, on plain language, attributed purpose, available precedent, and any background policy considerations that may bear." Huffington, 637 F. 3d at 21.

Extrinsic evidence aside, plaintiff argues that his claims neither "arise out of," nor are "based upon," the NPA, and that as such the plain language of its forum-selection

6

clause cannot govern. His own complaint, however, belies this argument and reveals all five interrelated agreements as integral to the deal ultimately struck – and thus to the claims arising from its dissolution.

In his complaint, plaintiff alleges both that (1) "[t]he NPA allows Deese-Laurent to purchase the Note and invest in RLI"; and that (2) "[i]n exchange for Deese-Laurent's $100,000 loan and the NPA and SRA, the Defendants agreed to an RLI stock acquisition and vesting scheme for Deese-Laurent. **Through these instruments**, Deese-Laurent would obtain RLI common stock and a significant ownership stake in RLI. But for this stock grant under the SRA, Deese-Laurent would not have lent the $100,000 to RLI or become an employee of RLI." FAC, ¶ 12, 25 (emphasis added). Plaintiff's basic premise is that his acceptance of employment was contingent on the SRA, but the SRA was in turn contingent on the NPA and Note that structured plaintiff's investment. Indeed, the preamble to the Employment Agreement demonstrates this interrelatedness:

> A. Real Liquidity is engaged in the business of facilitating the trading of private securities.
>
> B. Real Liquidity desires to have the services of ZDL.
>
> C. ZDL is willing to be employed by Real Liquidity.
>
> D. In connection with the execution and delivery of this Agreement, ZDL via an affiliated entity, RL Vineyard Investor, LLC is lending Real Liquidity $100,000 pursuant to a convertible promissory note of contemporaneous date herewith in said amount made by Real Liquidity payable to said Lender (the "Note")
>
> Therefore, the parties agree as follows . . .

Docket # 20-2, at 2. Accordingly, the present dispute would not have occurred absent the NPA. See Kebb Mgmt., 59 F.Supp.3d at 289 (citing Somerville Auto Transp. Serv.

7

Inc. v. Auto. Finance Corp., 691 F.Supp.2d 267, 272 (D. Mass. 2010)); see also Huffington, 637 F. 3d at 22 (disputed transaction could not have been made without the agreement containing forum-selection clause).

Counts II and IX of the Complaint explicitly invoke the NPA, alleging that defendants made material misrepresentations to induce plaintiff to enter into "the Employment Agreement, the Note, the NPA, and the SRA," FAC, ¶ 40, and into the "Employment Agreement, the NPA, and the SRA." FAC, ¶ 79. Because the deal struck depended on each interrelated agreement, the NPA's forum-selection clause may fairly reach even the counts that do not expressly highlight that agreement. See Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993) ("[T]he better general rule is that contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.").

### B. Parties in Interest to Note Purchase Agreement

Plaintiff nonetheless contends that he cannot be bound by an agreement to which he was not a contracting party. In support, he distinguishes between his individual interests and those of the entity for which he signed the NPA in an effort to style himself a "nonparty" to the NPA. Neither the agreements, nor his complaint, nor the law, comports with this position.

The NPA was entered into between RLI and RL Vineyard Investor, LLC. Plaintiff signed the NPA as manager of Vineyard Group Holdings, LLC, which in turn is the manager of Vineyard Investor, LLC – both Delaware limited liability companies. RLI issued a Note on the loan to RL Vineyard Investor, LLC. Just the same, the Employment Agreement recognizes plaintiff as the real party in interest to the NPA and

8

Note, characterizing the Note as "issued by Real Liquidity to ZDL". Docket # 20-2, at 4. Plaintiff's complaint similarly belies any real distinction between himself and the Vineyard entities:

> 11. Contemporaneously with Deese-Laurent's appointment as Director of Listing Services, **an entity of Deese-Laurent, RL Vineyard Investor, LLC** ("Vineyard") loaned RLI $100,000 . . .
>
> 25. At the time Deese-Laurent became RLI's Director of Listing Services, he also became, **through Vineyard**, a creditor of RLI . . . But for this stock grant under the SRA, **Deese-Laurent would not have lent the $100,000** to RLI or become an employee of RLI."

FAC ¶¶ 11, 25 (emphasis added).

"Federal courts within the First Circuit agree that when a corporate entity is so 'closely related' that it 'becomes foreseeable that it will be bound' by a forum-selection clause, the clause is enforceable against it." Noel v. Walt Disney Parks and Resorts U.S., Inc., No. 10-40071-FDS, 2011 WL 1326667, at *8 (D. Mass. Mar. 31, 2011). Where plaintiff's interests are derivative of Vineyard's, it is clearly foreseeable that he is as subject to the NPA's forum-selection clause as were the entities he managed. See id. at *9.

### IV. Conclusion

Because plaintiff and defendants are subject to the forum-selection clause, and because it is enforceable, the motion to transfer (Docket # 19) is GRANTED. The court therefore need not reach the other bases on which defendants have moved for relief, and their further motion to dismiss for lack of personal jurisdiction or for failure to state a claim on which relief may be granted (Docket # 7) is DENIED AS MOOT. See Doe v. Seacamp Ass'n, Inc., 276 F. Supp. 2d 222, 228 (D. Mass. 2003). Accordingly, it is

9

ordered that this case be transferred to the United States District Court for the Middle District of Florida.

|  |  |
|---|---|
|    March 30, 2018    |    /s/Rya W. Zobel    |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |